**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JESSY BOUSTANY,

Plaintiff,

-against-

XYLEM INC. and GEORGE EL HANI, *Individually.*

Defendant
-----------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff JESSY BOUSTANY ("BOUSTANY"), by and through her attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of Defendants, and upon information and belief, as follows:

**NATURE OF THE CASE**

1. Plaintiff BOUSTANY brings this action charging that the Defendants violated her rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq. ("Title VII") and the New York State Human Rights Law, New York State Executive Law § 296 *et. seq.*, seeking to recover lost wages, damages for emotional distress, punitive damages, and reasonable attorney's fees and costs, as a result of being sexually harassed and unlawfully discriminated against by Defendants because of her gender (female); subjected to a hostile working environment by Defendants because of her gender; and retaliated against by Defendants because she opposed unlawful employment discrimination based on her gender.

2. Defendants terminated Plaintiff BOUSTANY in an attempt to silence her so that it could

limit its exposure to legal and regulatory sanctions.

**JURISDICTION**

3. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 626(c), and 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

4. In addition, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

5. Venue is proper in that Defendant XYLEM's corporate headquarters is in Westchester County, a county within the Southern District of New York.

**PARTIES**

6. Plaintiff JESSY BOUSTANY ("BOUSTANY") is a resident of Beirut, Lebanon in the Middle East.

7. At all times relevant herein, Defendant XYLEM INC. ("XYLEM") was and is a publically traded foreign business corporation, duly incorporated, duly authorized and existing by virtue of the laws of the State of Indiana doing business in New York.

8. That at all times relevant hereto, Defendant XYLEM has its Principal Executive Office at 1133 Westchester Avenue, #N200, White Plains, New York 10604.

9. At all times material and relevant hereto, upon information and belief, Defendant GEORGE EL HANI ("EL HANI") was an employee of Defendant XYLEM and was Plaintiff BOUSTANY's direct supervisor and/or held supervisory authority over Plaintiff BOUSTANY.

10. At all times material and relevant hereto, Defendant EL HANI was the Managing Director of the Middle East for Defendant XYLEM and had that ability to hire, fire and effect the terms and conditions of Plaintiff's employment.

11. Upon information and belief, Plaintiff BOUSTANY is a Middle Eastern female.

12. Upon information and belief, EL HANI is a Middle Eastern male.

**PROCEDURAL PREREQUISITES**

13. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

14. Plaintiff received a Notice of Right to Sue from the EEOC, dated September 30, 2015, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

This action is being commenced within ninety (90) days of receipt of said Notice.

**MATERIAL FACTS**

15. In or about July 16, 2012, Plaintiff BOUSTANY commenced her employment with Defendant XYLEM as an application engineer.

16. At all times material and relevant hereto, Plaintiff BOUSTANY earned approximately €1264.00 per month which is approximately €15,168 per year. When converted to American Dollars this is approximately $1,337.15 per month and $16,045.80 per year.

17. Throughout Plaintiff BOUSTANY's tenure with Defendant XYLEM, Plaintiff BOUSTANY was an exemplary employee, always received compliments for her work performance and got along well with all of her co-workers.

18. However, Defendant EL HANI began to sexually harass Plaintiff BOUSTANY immediately upon the interview stage.

19. Throughout Plaintiff BOUSTANY's employment with Defendant, Defendant subjected Plaintiff BOUSTANY to a hostile work environment based on numerous acts of unwelcome sexual harassment, as well as discriminatory and retaliatory actions.

20. **By way of example, on or about July 2012, EL HANI sent Plaintiff BOUSTANY a text message immediately proceeding the first interview that read "gorgeous outfits" and "I know you have big potential".** Plaintiff understood these messages to be unwanted romantic advances.

21. **On or about July/August 2012, Defendant EL HANI tried to forcibly kiss Plaintiff BOUSTANY in the office.** Plaintiff rejected EL HANI's unwanted sexual advance.

22. On or about August 2012, EL HANI harassed Plaintiff BOUSTANY by complimenting her body features. **He specifically referenced her breasts and her buttocks**. Plaintiff found her boss, Defendant EL HANI's, reference to her sexual body parts to be unwanted and offensive.

23. On or about August/September 2012, EL HANI forced Plaintiff BOUSTANY to sit at his desk and to work in his office. Upon information and belief Defendant EL HANI's did this to give himself unfettered access to Plaintiff during business hours.

24. On or about September 2012, Defendant EL HANI made suggestive comments to Plaintiff, including but not limited to, that he cannot live without her and told her that he was having marital issues with his wife. Defendant EL HANI also told Plaintiff BOUSTANY that was in love with her. Upon information and belief, Defendant EL HANI made these unwanted romantic advances to manipulate Plaintiff into a sexual relationship with him.

25. Having endured Defendant EL HANI's sexual harassment for the past three months, on

or about September 2012, Plaintiff BOUSTANY's emotional distress had manifested into constant dizziness. Her doctor informed her that the dizziness was due to work related stress.

26. On or about October 2012, Plaintiff BOUSTANY was terminated for not acquiescing to Defendant EL HANI's harassing sexual advances. After sometime, Defendant EL HANI rehired Plaintiff BOUSTANY indicating he would do so for "personal reasons". **Plaintiff understood Defendant EL HANI's comment to indicate that her reemployment was conditioned on acquiescing to his sexual advances.**

27. On or about November 2012, Plaintiff BOUSTANY was in Austria for a training program. Although he had no business for Defendant Xylem to attend to, Defendant EL HANI decided to accompany Plaintiff in Austria for the training. **During this time, Defendant EL HANI made his first overt unwelcomed attempt to have sex with Plaintiff BOUSTANY. Plaintiff BOUSTANY rejected EL HANI's attempts.**

28. On or about December 2012, Defendant EL HANI accompanied Plaintiff in a training session in Italy. EL HANI booked a single room for both of them to stay. At this time, Defendant EL HANI had been making sexual advances towards her for 6 months, reminding her that her reemployment was contingent upon her acquiescence to sleep with him. Plaintiff BOUSTANY was physically exhausted and mentally drained from constant sexual harassment by Defendant EL HANI to sleep with her. **One night during this trip, Plaintiff in fear of losing her job, gave in to Defendant EL HANI's sexual advances. That night, Defendant EL HANI took her virginity remarking, slyly, to "never say never".**

29. After the trip to Italy, Plaintiff BOUSTANY's emotional distressed manifested into

depression and a lot of weight loss. Plaintiff BOUSTANY started to see a psychologist to help her with the mental anguish and feelings of manipulation she suffered from her sexually harassing work environment.

30. On or about January 2013, Plaintiff BOUSTANY's supervisor organized a business trip to Chicago and forced Plaintiff BOUSTANY to travel with him although she had no business in Chicago. EL HANI asked Plaintiff BOUSTANY to come to his room to discuss work related issues. Plaintiff objected and refused. He told her "I am your boss and I am asking you to come to this hotel." EL HANI again began to touch Plaintiff BOUSTANY and she kept pushing him away. Defendant EL HANI slept with Plaintiff BOUSTANY again and then kicked her out of his room. After he kicked Plaintiff BOUSTANY out of his room, she collapsed in the hallway. The next day Plaintiff awoke in her own room. Plaintiff BOUSTANY attempted to work that day. However, emotionally distraught, Plaintiff fainted again the following day.

31. On another business trip to Texas, Defendant EL HANI booked a room for him and Plaintiff BOUSTANY in one hotel and all of the other employees of Defendant were in a different hotel. Plaintiff BOUSTANY told Defendant EL HANI that she wanted to change her hotel reservation and have another employee change rooms since there were at least four other employees on the trip. Plaintiff did not want to be in the same hotel room as EL HANI; however EL HANI forced Plaintiff BOUSTANY to keep the reservation as is.

32. Plaintiff observed that when she reluctantly gave in to Defendant EL HANI's sexual advances, he was kind to her and supported her professionally. Defendant EL HANI's used Plaintiff's cultural practices and lack of sexual experience to manipulate and control

her. This caused Plaintiff psychological damage that caused the continued fainting spells. However, when Plaintiff regains strength—through support from her therapist, Defendant EL HANI became brutish, curt and treated Plaintiff less well than other employees.

33. On or about March 2013, EL HANI told Plaintiff BOUSTANY that he is a married man and wanted to preserve his family. Despite this, he made it clear that he expected Plaintiff BOUSTANY to continue as his sexual partner. Plaintiff BOUSTANY rejected EL HANI's offer. Defendant EL HANI again reminded Plaintiff that her job was at stake.

34. Plaintiff BOUSTANY repeatedly complained to Defendant that EL HANI's conduct was unwelcome and unwanted, but he continued to inappropriately and illegally touch her, causing her extreme discomfort, embarrassment and humiliation.

35. Plaintiff found Defendant's constant sexual harassment and manipulation to be offensive and an abuse of his power as Managing Director.

36. On or about September 2013, Plaintiff BOUSTANY complained to the regional director of XYLEM Valerie Lassalle about the sexual harassment and discrimination she endured at the hands of Defendant EL HANI.

37. Valerie Lassalle reported the matter to Cornett Lewers who was the Chief Ethics and Compliance Officer in Xylem's New York headquarters.

38. On or about November 7, 2013, Cornett Lewers reached out to Plaintiff BOUSTANY and informed her that an investigation will take place.

39. During the pendency of the purported investigation, Defendant EL HANI's treatment of Plaintiff grew retaliatory and unbearable.

40. Plaintiff BOUSTANY than made several written and verbal attempts to reach out to her supervisors and other authorities at XYLEM. On or about November 11, 2013,

November 18, 2013, December 8, 2013, January 12, 2014, January 15, 2014, February 11, 2014, February 12, 2014, February 24, 2014, March 16, 2014, March 20, 2014, March 23, 2014, April 6, 2014, October 14, 2014, October 16, 2014, Plaintiff BOUSTANY made complaints to Valerie Lassalle, Cornette Lewers, Zelna Mare, and Vincent Chirouze about Defendant EL HANI, the hostile work environment she was being subjected to and acts of retaliation.

41. On or about February 27, 2014, Plaintiff BOUSTANY again complained directly to Defendant EL HANI about his unlawful and unwelcomed behavior.

42. On January 06, 2014, February 17, 2014, February 20, 2014, March 18, 2014 Plaintiff BOUSTANY reached out by email to Cornett Lewers, Valerie Lassalle and Vincent Chirouze to follow up about the complaint she filed on November 7, 2013.

43. Defendants failed to appropriately respond to any of Plaintiff's complaints of a hostile work environment and retaliation, though she repeatedly asked for it.

Retaliation

44. On or about December 2013/January 2014, in retaliation for complaining about George El Hani, Defendant EL HANI demoted Plaintiff BOUSTANY. This changed the term and conditions of Plaintiff's employment, included but is not limited to; she was made to report to a manager based in Dubai, making it impossible to get timely responses, guidance and support. All of the other employees in the Lebanon office were promoted to managerial positions. These individuals were unqualified and some of them didn't even have the requisite degree needed for the promotion. Later, some of the employees that had been promoted by Defendant EL HANI were demoted because they were unable to fulfill the responsibilities required of them in their new positions.

45. On or about December 2013 and later in February 2014, Defendant EL HANI further retaliated against Plaintiff by blaming Plaintiff BOUSTANY for other employee's work related mistakes. Plaintiff was publically reprimanded and disciplined for these discrepancies. Plaintiff BOUSTANY reported Defendant EL HANI's retaliation to HR and top management in France and in New York.

46. On or about January 2014, Plaintiff was scheduled to travel to Chicago. However, Defendant EL HANI lied to Plaintiff and told her that XYLEM is cutting costs and that nobody will be travelling to Chicago that year. However, Defendant EL HANI did in fact plan to go to Chicago along with other Lebanese employees who did not have any business to attend to. Plaintiff was excluded from this trip. Plaintiff BOUSTANY complained to the regional director Vincent Chirouze. One week after the complaint, Vincent Chirouze informed Plaintiff BOUSTANY that he had canceled Defendant EL HANI's business trip, promising Plaintiff BOUSTANY that she would be visiting the factory in Chicago another time during the year.

47. On or about February 2014, Plaintiff BOUSTANY's new sales support manager Juby James asked her to come to the Dubai office. This trip was necessary to allow Plaintiff to get the information, support and resources she needed to execute her duties. Defendant EL HANI intervened and demanded that she not be allowed to go on this trip. Plaintiff BOUSTANY reported this to Cornett Lewers and the regional Human Resources representative Valerie Lassalle. While they both seemed very concerned about EL HANI's retaliation, they did not do anything to stop his conduct.

48. Once Plaintiff BOUSTANY complained to management about the sexual harassment, her work environment became even more stressful and unsupportive. Her colleagues stopped

talking to her. She was isolated from her colleagues who saw her as a "troublemaker". Plaintiff was so distraught from this that management granted Plaintiff BOUSTANY the ability to work from home as an "exceptional option." By way of example, Plaintiff BOUSTANY went to the office one day and none of her co-workers would talk to her. They would sit together talking about Plaintiff BOUSTANY which made her feel dizzy again.

49. Defendant also retaliated against Plaintiff by having her stay in much cheaper hotels than the rest of her former employees. These hotels were sometimes in unsafe and undesirable areas far from the work site. The other employees would stay in 5 stars hotels when they traveled.

50. Plaintiff BOUSTANY sent Defendant Xylem's Human Resources an email asking for them to protect her, as an employee, and to protect her against the retaliation. Defendant Xylem never responded. Plaintiff BOUSTANY's manager also addressed the issue but they didn't respond to her either.

51. On or about March 2014, Cornett Lewers traveled to Lebanon along with the regional HR Valerie Lassalle and the regional director Vincent Chirouze. While in Lebanon, they released EL HANI from employment, promising Plaintiff BOUSTANY "beautiful days and promotions". Plaintiff was not given any promotions nor was she ever interviewed for a position. Plaintiff BOUSTANY was qualified for on position in particular, since she speaks French. Instead of interviewing Plaintiff and offering her the position, they hired an employee from France.

52. Around October 2014, Plaintiff's expenses were not getting reimbursed. Plaintiff BOUSTANY reported this to Cornett Lewers in the New York headquarters. Plaintiff

was paid her expenses two months later.

53. Upon information and belief, as condition precedent to Defendant Xylem's business offer to Defendant EL HANI,   on or about November 2014, Plaintiff was terminated.  Plaintiff was not given a reason for her termination.  This termination came, despite just one day before, Plaintiff BOUSTANY being promised a salary augmentation and praise for her work. The regional director, Vincent Chirouze, had met with Plaintiff BOUSTANY in Dubai and told her that he would adjust her salary and that Xylem really appreciated her work.

54. Plaintiff was asked to come in for an unexpected meeting where she was told that she was a brilliant engineer but that she must leave the company.   Plaintiff was promised Defendant Xylem would find her another job and would provide her with an exceptional letter of recommendation.  Defendant also told Plaintiff BOUSTANY that they will pay her to resignation provided she signed a confidentiality agreement.

55. Plaintiff BOUSTANY sent an email to the CEO Patrick Decker and the HR director Cornett Lewers, advising them of Defendant Xylem's plan to enter into a new business relationship with Defendant EL HANI and her impending termination.  They informed Plaintiff BOUSTANY that the decision regarding her termination would stand.

56. Defendants hid Plaintiff's termination from other employees and told employees that she was on sick leave.  Three weeks after her termination, Defendants officially announced that Plaintiff left Xylem.

57. Plaintiff BOUSTANY's direct manager was told not to intervene and was unaware about management's decision to terminate Plaintiff BOUSTANY.

58. Upon information and belief, XYLEM has been monitoring Plaintiff BOUSTANY's

personal e-mail since October 2014. Plaintiff BOUSTANY was informed by a director at XYLEM that emails exchanged between Plaintiff BOUSTANY and the director were in the possession of other XYLEM employees.

59. It is clear, however, that Plaintiff was terminated solely in retaliation of her complaints of Defendants' numerous violations of the law.

60. It is clear that Defendant discriminated against, verbally and sexually harassed, and treated Plaintiff BOUSTANY differently because of her gender (female).

61. Plaintiff BOUSTANY was treated differently (sexually harassed) by Defendant because of her gender (female).

62. Defendant retaliated against Plaintiff BOUSTANY because she complained about Defendants' unwanted sexual harassment and discrimination.

63. Plaintiff BOUSTANY was regularly exposed to a sexually offensive and hostile work environment.

64. But for the fact that Plaintiff BOUSTANY is a female, Defendant would not have treated her differently (subjected her to sexual harassment).

65. But for the fact that Plaintiff BOUSTANY complained about sexual harassment and discrimination, Defendant would not have retaliated against her.

66. Plaintiff BOUSTANY felt offended, disturbed, and humiliated by this constant harassment.

67. Plaintiff BOUSTANY has been unlawfully discriminated against, humiliated, has been degraded, and as a result, suffers loss of rights, emotional distress, and loss of income and earnings.

68. Defendants' actions and conduct were intentional and intended to harm Plaintiff

BOUSTANY.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced and is continuing to experience severe emotional and physical distress.

70. As a result of the above Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

71. As Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages against Defendant.

72. The above are just some of the acts of harassment, discrimination and retaliation that Plaintiff has regularly and continually experienced while working for Defendants.

**AS A FIRSTCAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

75. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*., by discriminating and/ or sexually harassing Plaintiff because of her sex.

76. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(Not Against Individual Defendant)**

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

79. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER New York STATE EXECUTIVE LAW**

80. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an

individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

82. Defendants have engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her gender (sexual harassment).

**AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER New York STATE EXECUTIVE LAW**

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

85. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER New York STATE EXECUTIVE LAW**

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of

any acts forbidden under this article, or attempt to do so."

88. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

**JURY DEMAND**

89. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiffs respectfully request a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law, in that Defendants sexually harassed, discriminated against Plaintiff on the basis of her gender, and retaliated against Plaintiff for complaining of sexual harassment;

B. Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       December 23, 2015

                                        **PHILLIPS & ASSOCIATES**
                                        **ATTORNEYS AT LAW, PLLC**

                                        Marjorie Mesidor, Esq.
                                        Brittany A. Stevens, Esq.
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 620
                                        New York, NY 10006
                                        (212) 248-7431

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

To: Jessy Boustany
C/O Phillips & Associates
45 Broadway, Suite 620
New York, NY 10006

From: New York District Office
33 Whitehall St., 5th Floor
New York, NY 10004

RECEIVED OCT 02 2015 BY: [signature]

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-02522 | Charles K. Diamond, Investigator | (212) 336-3771 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for **any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

[signature] 9/30/2015

Kevin J. Berry, District Director (Date Mailed)

Enclosures(s)

cc:

Director of Human Resources
XYLEM, INC.
1 International Dr
Rye Brook, NY 10573

Mary A. Smith, Esq.
JACKSON LEWIS P.C.
44 South Broadway, 14th Fl.
White Plains, NY 10601

Marjorie Mesidor, Esq.
PHILLIPS & ASSOCIATES
45 Broadway, Suite 620
New York, NY 10006